Dana S. and Marie G. Beane v. Commissioner.
Beane v. Commissioner
Docket No. 52333.
United States Tax Court
T.C. Memo 1956-8; 1956 Tax Ct. Memo LEXIS 289; 15 T.C.M. (CCH) 38; T.C.M. (RIA) 56008; January 17, 1956
*289 Paul A. Gorin, Esq., 27 State Street, Boston, Mass., for the petitioners. Bertram Williams, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion KERN, Judge: This case was submitted on a stipulation of facts. We find the facts to be as stipulated. The stipulation reads as follows: "1. The petitioners, husband and wife, are individuals residing in Laconia, New Hampshire. "2. The petitioners filed joint federal income tax returns for the taxable years 1950 and 1951 with the Collector of Internal Revenue for the District of New Hampshire, and for the taxable year 1952 with the Director of Internal Revenue for the District of New Hampshire. "3. On February 17, 1954, the Commissioner of Internal Revenue sent to petitioners by registered mail a statutory notice of deficiencies as follows: Year
Kind of Tax
Deficiency
1950
Income
$ 503.14
1951
Income
3,070.06
1952
Income
172.20
"4. The petitioner Dana S. Beane purchased a funeral business from Lewis H. Wilkinson, his former employer, on January 2, 1947. On that date a bill of sale and a purchase agreement were made. The Bill of Sale and the Agreement are attached hereto *290 as Exhibits 1-A and 2-B, respectively. The business purchased included the following assets: Building, Land, Funeral Coach - Cadillac, Ambulance - Oldsmobile, Funeral Car - Pontiac, Plymouth Car, Equipment - Office & Funeral, Merchandise "5. In accordance with item (6) of Exhibit 2-B (the agreement), the petitioner Dana S. Beane was to pay Lewis H. Wilkinson $100.00 per week for a period of ten years or a total of $52,000, unless the said Lewis H. Wilkinson should die prior to the expiration of said ten year period; if this occurred, said contract would terminate at the end of the calendar year in which the said Lewis H. Wilkinson died and all payments would cease at that time. "6. The said vendor, Lewis H. Wilkinson, died on August 6, 1950. "7. In accordance with the terms of the agreement (Exhibit 2-B) the contract did terminate on December 31, 1950, at which time actual payments had been made by the petitioner Dana S. Beane to Lewis H. Wilkinson in the amount of $20,800.00. "8. On September 19, 1951, the petitioner Dana S. Beane sold the land and buildings acquired under the aforementioned agreement in paragraph 4 for twenty ($20,000.00) thousand dollars. "9. Petitioners *291 have claimed a cost basis for the taxable years 1950 and 1951 of the property set forth in paragraph 4, as follows: Building
$25,000.00
Land
10,000.00
Funeral Coach - Cadillac
3,500.00
Ambulance - Oldsmobile
1,800.00
Funeral Car - Pontiac
1,200.00
Plymouth Car
500.00
Equipment - Office &
Funeral
450.88
Merchandise
9,549.12
Total
$52,000.00 "10. Respondent has determined the cost basis of assets listed in paragraph 4 on their actual cost as follows: Building
$10,000.00
Land
4,000.00
Funeral Coach - Cadillac
1,400.00
Ambulance - Oldsmobile
720.00
Funeral Car - Pontiac
480.00
Plymouth Car
200.00
Equipment - Office &
Funeral
180.35
Merchandise
3,819.65
$20,800.00
"11. The only issue in this proceeding is whether the cost basis of real property described in paragraph 8 and sold in 1951 by petitioners is $35,000.00 or $14,000.00." The more pertinent parts of the purchase agreement referred to in the stipulation read as follows: * * *
"(1) WHEREAS the said vendor has for many years past exercised his profession as a mortician and undertaker at said Laconia, and is now desirous of retiring from his practice *292 and said business aforesaid at said Laconia, and the purchaser who has been an employee of said vendor for many years as a mortician is desirous of establishing himself in said business. "(2) NOW THEREFORE, the said vendor agrees to sell to the purchaser, who agrees to purchase, the said business and good will and benefits thereof from the second day of January, 1947, together with all fixtures, furniture, inventory, equipment of all kinds used in said business and other instruments and apparatus and all other things now used therein situated in the premises known as #75 Beacon Street and in storage on Academy Street in said Laconia, where said business has been heretofore conducted including the real estate, Cadillac funeral coach, Henney funeral coach, Pontiac automobile and a Plymouth automobile; it being the intention of the vendor to sell and convey to the purchaser the real estate at said #75 Beacon Street and all personal property and equipment of all kinds and the business which the said vendor has conducted heretofore under the firm name of Wilkinson Funeral Home, with the exception of the accounts receivable and one Buick automobile, in confirmation and consideration of *293 which purchase the purchaser, upon the execution of these presents, agrees to pay the vendor the amount hereinafter provided. * * *
"(6) The said purchaser, in consideration of the agreements on the part of the vendor hereinbefore contained, hereby further agrees to pay the said vendor, his executors or administrators the sum of One Hundred Dollars per week for the period of ten years, the first payment of One Hundred Dollars to be due March 5, 1947, and the minimum of $100.00 each Wednesday thereafter, provided that during the calendar year of 1947 the said purchaser will pay to said vendor $5200.00 and beginning with the year 1948 the said purchaser shall pay to said vendor $10.00 each Wednesday until the termination of this contract as herein provided. It being the intention of the parties hereto that the vendor shall receive $5200.00 annually during the term of this agreement. It being understood, however, that if the said vendor should decease prior to the expiration of said ten year period, then and in that case, said contract shall terminate at end of the calendar year in which the said vendor shall decrease and payments of said One Hundred Dollars per week for the remainder *294 of the calendar year after decease of said vendor shall be paid to his executors, administrators or assigns. At the end of the calendar year in which the said vendor deceases, if prior to ten years, the estate of the said vendor will have no rights, claim or interest in said real estate or personal property and said purchaser shall be entitled to the said real estate and all of said personal property, free and clear from any claims whatsoever from said estate of said vendor. And the executor or administrator of said vendor shall discharge any existing mortgages, both real or personal, or sign and deliver to said purchaser any other documents or instruments necessary to give the purchaser good and sufficient title to said property. "(7) If default in payment of any of said weekly payments shall be made and shall continue for a period of thirty days, after the said vendor shall have notified the purchaser by Registered mail of such default in payments, or violation of the conditions of said agreement, then and in that case, the title to said real estate will revert to said vendor and it shall be lawful for the vendor, his executors, administrators, or assigns, to re-enter and have *295 and enjoy said real estate and all of said personal property as of their former estate, and to eject, oust, and remove the purchaser, his heirs, executors, administrators or assigns therefrom. And in the event of said condition to pay said sum of One Hundred Dollars per week as hereinbefore described, is not strictly performed as described and provided, then the title to said real estate and all of said personal property shall vest in the vendor, his heirs or assigns, and all rights, title and interest therein of said purchaser, his heirs or assigns, shall terminate. And the said purchaser agrees to sign all necessary documents, instruments or deeds to properly vest title to said property, both real and personal, in said vendor, his heirs or assigns. Time shall be of the essence of this condition." * * *
The determination of the issue stated in the stipulation depends on whether we conclude that the cost basis of petitioner Dana S. Beane, hereinafter referred to as petitioner, with regard to the assets purchased by him from Wilkinson in 1947 should be in the full amount of his potential liability to Wilkinson under the purchase agreement ($52,000) or the actual amount paid ($20,800). *296 The parties are in agreement as to the proportion of the cost allocable to the land and building sold by petitioner in 1951. We conclude in this case, as we did in , that petitioner's "actual outlay * * * constitutes his cost." Petitioners' counsel has filed herein a "Memorandum of Law" consisting of two pages in which his sole contention is that the principles of law stated in , and are applicable to the instant case. We are unable to agree. In this case there is nothing to suggest that the parties to the purchase agreement considered the fair market value of the property purchased to be in excess of the value of the obligation assumed by petitioner under the agreement and that there was an intent on the part of Wilkinson to make a gift to petitioner of any excess of market value of the property over the value of petitioner's obligation to Wilkinson. Decision will be entered for respondent.